UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ANTONIA TARPLEY, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Cause No. 3:23-CV-00233 |
| CASH LINK USA, LLC AND JOHN DOES *1 – 10*, | § § § § | |
| *Defendants*. | § § | |

**BRIEF IN SUPPORT OF DEFENDANT CASH LINK USA, LLC'S
MOTION TO COMPEL ARBITRATION AND TO DISMISS THE ACTION**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

I. SUMMARY OF ARGUMENT AND RELIEF REQUESTED ......................................... 1

II. FACTUAL BACKGROUND .............................................................................................. 1

III. LEGAL ARGUMENTS AND AUTHORITIES ................................................................ 2

    A. Federal and State Law Favor Arbitration ................................................................ 2

    B. The Arbitration Provision at Issue is Governed by the FAA .................................. 3

    C. The Elements Required to Compel Arbitration are Met in this Case. .................... 4

        1. The Parties Agreed to Arbitrate. ................................................................. 5

            i. A Valid Agreement to Arbitrate Exists ............................................ 5

            ii. Plaintiff's Claims Fall Within the Scope of the Arbitration Provision. .......................................................................................... 7

    D. Class Action Waiver .............................................................................................. 10

    E. The Lawsuit Should be Dismissed with Prejudice. ............................................... 10

IV. REQUEST FOR RELIEF ................................................................................................. 11

CERTIFICATE OF SERVICE ..................................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Alford v. Dean Witter Reynolds, Inc.*,
　975 F.2d 1161 (5th Cir. 1992) ................................................................................................. 10

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
　513 U.S. 265, 115 S. Ct. 834 (1995) ......................................................................................... 4

*Alvarado v. Conn Appliances, Inc.*,
　1:16-CV-464-LY, 2016 WL 6834020 (W.D. Tex. Nov. 17, 2016), report and
　recommendation adopted, 1:16-CV-464-LY, 2016 WL 10950458 (W.D. Tex.
　Dec. 14, 2016) ........................................................................................................................... 9

*Am. Bankers Ins. Co. of Florida v. Inman*,
　436 F.3d 490 (5th Cir. 2006) .................................................................................................... 3

*Am. Realty Trust, Inc. v. JDN Real Estate-McKinney, L.P.*,
　74 S.W.3d 527 (Tex. App.—Dallas 2002, pet. denied) ............................................................ 7

*Am. Std. v. Brownsville Indep. Sch. Dist. (In re D. Wilson Constr. Co.)*,
　196 S.W.3d 774 (Tex. 2006) ................................................................................................. 5, 7

*American Employers' Ins. Co. v. Aiken*,
　942 S.W.2d 156 (Tex. App.—Fort Worth 1997, no writ) ....................................................... 8

*ARWExploration Corp. v. Aguirre*,
　45 F.3d 1455 (10th Cir. 1995) .................................................................................................. 3

*AT&T Techs., Inc. v. Communications Workers of Am.*,
　475 U.S. 643 (1986), *cert. denied*, 525 U.S. 822 (1998) ......................................................... 3

*Capital Income Properties-LXXX v. Blackmon*,
　843 S.W.2d 22 (Tex. 1992) ....................................................................................................... 2

*Cash Biz, LP v. Henry*,
　539 S.W.3d 342 (Tex. App.—San Antonio 2016), *aff'd*, 551 S.W.3d 111 (Tex.
　2018) ....................................................................................................................................... 10

*Deosaran v. Ace Cash Express, Inc.*,
　4:16-CV-00919-O-BP, 2017 WL 1318568 (N.D. Tex. Mar. 23, 2017), report and
　recommendation adopted, 4:16-CV-00919-O-BP, 2017 WL 1296453 (N.D. Tex.
　Apr. 7, 2017) ............................................................................................................................. 9

*First Options of Chicago, Inc. v. Kaplan*,
　514 U.S. 938 (1995) .................................................................................................................. 5

*Forged Components, Inc. v. Guzman*,
    409 S.W.3d 91 (Tex. App.—Houston [1st Dist.] 2013, no pet.) .............................................. 6

*Freudensprung v. Offshore Tech. Servs., Inc.*,
    379 F.3d 409 (5th Cir. 2004) ................................................................................................ 5

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ............................................................................................................ 2, 3

*Henry v. Cash Biz, LP*,
    551 S.W.3d 111 (Tex. 2018) .............................................................................................. 1, 8

*In re Conseco Finance Servicing Corp.*,
    19 S.W.3d 562 (Tex. App.—Waco 2000, orig. proceeding) ........................................... 7, 8, 9

*In re FirstMerit Bank, N.A.*,
    52 S.W.3d 749 (Tex. 2001) ................................................................................................... 7

*In re J.D. Edwards World Solutions Co.*,
    87 S.W.3d 546 (Tex. 2002) (per curiam) .............................................................................. 7

*In re Kellogg Brown & Root*,
    80 S.W.3d 611 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) .............................. 4

*Life of America Ins. Co. v. Aetna Life Ins. Co.*,
    744 F.2d 409 (5th Cir. 1984) ................................................................................................. 2

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*,
    105 S.Ct. 3346 (1985) ........................................................................................................... 5

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1982) .................................................................................................................. 3

*NCP Finance Ltd. Partnership v. Escatiola*,
    350 S.W.3d 152 (Tex. App.—San Antonio, no pet.) ......................................................... 9, 10

*OPE International LP v. Chet Morrison Contractors, Inc.*,
    258 F.3d 443 (5th Cir. 2001) ................................................................................................. 4

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
    139 F.3d 1061 (5th Cir. 1998) ............................................................................................... 7

*Porter & Clements, LLP v. Stone*,
    935 S.W.2d 217 (Tex. App.—Houston [1st Dist.] 1996, no writ) .......................................... 6

*Prudential Sec., Inc. v. Marshall*,
    909 S.W.2d 896 (Tex. 1995) ................................................................................................. 2

*Sexton v. Credit One Bank*,
  5:15-CV-589-DAE, 2016 WL 6662423 (W.D. Tex. Jan. 4, 2016) .......................................... 9

*Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*,
  109 S.Ct. 1248 (1989) .................................................................................................... 5

*Wash. Mut. Fin. Group, LLC v. Bailey*,
  364 F.3d 260 (5th Cir. 2004) ......................................................................................... 5

*Washington v. Sears Logistics Servs., Inc.*,
  2014 WL 2159253 (N.D. Tex. May 23, 2014) ........................................................ 11

*White v. SoftLayer Techs., Inc.*,
  3:15-CV-527-M, 2015 WL 5052365 (N.D. Tex. Aug. 27, 2015) ............................ 10

**Statutes**

Federal Arbitration Act,
  9 U.S.C. § 1 *et seq*................................................................................................. 3
  9 U.S.C. § 2 .......................................................................................................... 3
  9 U.S.C. § 3 .......................................................................................................... 11

Defendant, Cash Link USA, LLC ("Defendant"), files this brief in support of its motion to compel arbitration and to dismiss this action with prejudice or, in the alternative, stay the action pending arbitration. In support thereof, Defendant respectfully shows unto the Court as follows:

## I.   SUMMARY OF ARGUMENT AND RELIEF REQUESTED

Plaintiff Antonia Tarpley's ("Plaintiff") attempt to bring the underlying dispute in this Court directly contradicts the parties' agreement—which is comprised of a credit services agreement and corresponding waiver of jury trial and arbitration agreement (collectively, the "Agreement"). *See* **Exhibit A**, Credit Services Agreement, attached hereto; *see also* **Exhibit B**, Arbitration Provision, attached hereto.

The Agreement contained broad and binding arbitration provisions that mandate the arbitration of all legal disputes. *See* Exhibit A, at p. 8; *see* Exhibit B; *see also Henry v. Cash Biz, LP*, 551 S.W.3d 111, 116 (Tex. 2018) (holding arbitration agreement – which contained nearly identical language to the arbitration agreement at hand – to be enforceable). The parties expressly agreed to arbitrate, and the claims asserted by Plaintiff are arbitrable. *Id*. Accordingly, Defendant seeks an order: (1) enforcing the arbitration provision and compelling the Plaintiff to arbitrate her claims, and (2) dismissing this action with prejudice or, in the alternative, staying this action pending the resolution of the arbitration proceedings.

## II.   FACTUAL BACKGROUND

Defendant is a credit access business that assists customers in obtaining extensions of credit (*i.e.*, loans) from third-party lenders. If Defendant successfully assists the customer in obtaining an extension of credit, Defendant charges a fee that is incorporated into the loan and paid pursuant to the applicable loan installments.

On or near April 25, 2022, Plaintiff applied for an extension of credit on Defendant's website. Defendant approved the application and assisted Plaintiff in obtaining credit in the amount

of eight hundred dollars ($800.00) to be funded by a third-party lender.  *See* Exhibit A.  That same day, on April 25, 2022, Plaintiff executed the Agreement in acceptance of the credit.  *Id.*  The Agreement contained an express arbitration provision (hereafter, "Arbitration Provision").  *Id.* at p. 8; *see also* Exhibit B.

On or near January 31, 2023, Plaintiff filed suit against Defendant, alleging that Defendant's communications with Plaintiff violated certain provisions of the Telephone Consumer Protection Act ("TCPA") and the Texas Debt Collection Act ("TDCA").  All communications between Plaintiff and Defendant arose out of Defendant's efforts to collect amounts owed by Plaintiff pursuant to the Agreement.  Because the Agreement contains a valid and binding arbitration provision, and Plaintiff's claims fall within the scope the Agreement's Arbitration Provision, Defendant seeks an order from this Court compelling this action to arbitration.

### III.    LEGAL ARGUMENTS AND AUTHORITIES

Defendants respectfully ask the Court to compel arbitration pursuant to the Arbitration Provision and to dismiss this action with prejudice or – in the alternative – stay this action pending the resolution of the arbitration.

**A.    Federal and State Law Favor Arbitration.**

Arbitration of disputes is strongly favored under both federal and state law.  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Life of America Ins. Co. v. Aetna Life Ins. Co.*, 744 F.2d 409, 412-13 (5th Cir. 1984); *Capital Income Properties-LXXX v. Blackmon,* 843 S.W.2d 22, 23 (Tex. 1992); *Prudential Sec., Inc. v. Marshall,* 909 S.W.2d 896, 898 (Tex. 1995).  Under Texas law, a presumption exists in favor of enforcement of arbitration.  *Marshall,* 909 S.W.2d at 898-99.  When the factual allegations in the complaint on their face establish that the asserted claims fall within the scope of an arbitration agreement, a trial court abuses its discretion by declining to compel arbitration of the claims and stay the trial court proceedings.  *Id.*

2

The strong federal policy favoring arbitration requires all doubts in interpreting the scope of arbitration agreements to be resolved in favor of arbitration.  *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1982).  This presumption is heavy and arbitration should not be denied unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *ARWExploration Corp. v. Aguirre*, 45 F.3d 1455, 1462 (10th Cir. 1995) (citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986), *cert. denied*, 525 U.S. 822 (1998)).

**B.     The Arbitration Provision at Issue is Governed by the FAA.**

Congress enacted the Federal Arbitration Act ("FAA") in order to "reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Am. Bankers Ins. Co. of Florida v. Inman*, 436 F.3d 490, 493 (5th Cir. 2006); *Gilmer*, 500 U.S. at 24. The FAA permits an aggrieved party to file a motion to compel arbitration when an opposing "party has failed, neglected, or refused to comply with an arbitration agreement." *Gilmer*, 500 U.S. at 25.

The FAA governs arbitration provisions in contracts "involving commerce." 9 U.S.C. § 1 *et seq*. The FAA provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id*. at § 2. In the matter at hand, the Arbitration Provision – which was acknowledged and agreed to by Plaintiff – expressly stipulated that the underlying transaction involved interstate commerce and that it shall be governed by the FAA. Specifically, the Agreement provided:

> **The parties acknowledge that this Agreement is made pursuant to a transaction involving interstate commerce**. Therefore, the parties agree that **the enforceability and interpretation of this Agreement shall be governed**, in the first instance, **by the Federal Arbitration Act ("FAA")**. To the extent that the FAA does not

3

>apply to this Agreement, in whole or in part, then this Agreement shall be governed, to the extent the FAA is found not to apply, by the law of the State of Texas, including the Texas Arbitration Act.

*See* Exhibit B, at § 8 (emphasis added).

Even if the Arbitration Provision did not contain the aforementioned language, the transaction at hand nevertheless involved interstate commerce. As recognized by the Supreme Court, the FAA's "interstate commerce" requirement is to be construed broadly. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 835 (1995). The words "involving commerce" are the functional equivalent of the phrase "affecting commerce." *Id*. Here, Defendant (a company headquartered in Missouri) assisted Plaintiff (an individual residing in Texas) in obtaining a loan from a third-party lender. As such, this transaction certainly involved interstate commerce. At the very least, it cannot be disputed that this transaction *affected* interstate commerce.[1] Accordingly, the Arbitration provision is governed by the FAA.

**C.      The Elements Required to Compel Arbitration are Met in this Case.**

When deciding whether parties should be compelled to arbitrate, courts conduct a two-step inquiry. *OPE International LP v. Chet Morrison Contractors, Inc.*, 258 F.3d 443, 445 (5th Cir. 2001). **First**, a court must decide whether the parties agreed to arbitrate their dispute. *Id*. "This determination involves two considerations: **(1)** whether there is a valid agreement to arbitrate between the parties; and **(2)** whether the dispute in question falls within the scope of that arbitration agreement." *Id*. (emphasis added). **Second**, once the court finds that the parties agreed to arbitrate, it must consider whether any federal statute or policy renders the claims non-arbitrable (*i.e.*,

---

[1] Under Texas law, when there is an express agreement to arbitrate under the FAA, courts have upheld such provisions even though the transaction at issue does not involve interstate commerce. *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding). As the *Kellogg* court explained, when "the parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce." *Id*.

unenforceable). *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004). If a valid agreement is found, and there are no legal constraints external to the agreement that foreclose arbitration, then arbitration is mandatory. *See Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University*, 109 S.Ct. 1248, 1254-1256 (1989); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 105 S.Ct. 3346, 3354-3355 (1985) ("Having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue."). Here, the inquiry dictates that arbitration must be compelled.

### 1. The Parties Agreed to Arbitrate.

Determining whether the parties agreed to arbitrate, as explained above, involves two considerations—whether a valid arbitration agreement exists and whether the dispute falls within the scope of that agreement. *Bailey*, 364 F.3d at 263. When making this determination, courts apply the law of the state that governs the agreement at issue. *Id*. at 264; *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). This is because arbitration is a matter of contract between the parties. *Id*. In the case at hand, the Agreement is governed by Texas law. *See* Exhibit A, at p. 6.

#### i. *A Valid Agreement to Arbitrate Exists.*

The first consideration is whether a valid arbitration agreement exists. This determination is a question of law. *Am. Std. v. Brownsville Indep. Sch. Dist. (In re D. Wilson Constr. Co.)*, 196 S.W.3d 774, 781 (Tex. 2006). "[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves that the arbitration clause itself was a product of fraud, coercion, or such grounds as exist at law or in equity for the revocation of the contract." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 409, 412 (5th Cir. 2004) (internal quotation marks and citations omitted). An arbitration agreement does not have to be in

5

any particular form. *Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 100 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Here, the Arbitration Provision contained an arbitration requirement, a waiver of jury trial, and a waiver of the right to bring a class action, stating:

> **BY SIGNING BELOW, EACH PARTY TO THIS AGREEMENT ACKNOWLEDGES AND AGREES TO:**
>
> **a. GIVE UP THE RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST THE OTHER PARTY AND/OR ITS RELATED THIRD PARTIES;**
>
> **b. GIVE UP THE RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST THE OTHER PARTY AN/OR ITS RELATED THIRD PARTIES; and**
>
> **c. GIVE UP THE RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST THE OTHER PARTY AND OR ITS RELATED THIRD PARTIES.**

*See* Exhibit B, at § 2 (emphasis in original).

Plaintiff voluntarily entered into the Agreement (*i.e.*, the Arbitration Provision), which referred all disputes between the parties to binding arbitration. *See* Exhibits A & B. Plaintiff enjoyed the benefits of the underlying Agreement and obtained benefits or funds based on, and arising out of, the Agreement. The Arbitration Provision also contained an opt out provision, but Plaintiff did not exercise this right. *See* Exhibit B, § 10. Further, the Arbitration Provision is binding as it expressly stated that it is binding and that a court may enter judgment on the award. *See Porter & Clements, LLP v. Stone*, 935 S.W.2d 217, 220-21 (Tex. App.—Houston [1st Dist.] 1996, no writ). Accordingly, a valid agreement to arbitrate exists.

Because the Court has been presented with a valid arbitration agreement, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *Id.* Absent a defense to enforcing the arbitration agreement, the Court has no discretion but to compel arbitration and stay its own proceedings. *In re J.D. Edwards World Solutions Co.*, 87 S.W.3d 546, 549 (Tex. 2002) (per curiam). Plaintiff has no defense to the valid and enforceable Arbitration Provision.

### ii.   Plaintiff's Claims Fall Within the Scope of the Arbitration Provision.

The second consideration is whether the arbitration agreement encompasses the claims raised. *Am. Std.*, 196 S.W.3d at 781. Any doubts about the scope of an arbitration agreement must be resolved in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001).

A broad arbitration clause – such as the one at hand – that purports to cover all claims, disputes, and other matters arising out of or relating to the contract, is deemed to create a presumption of arbitrability. *Am. Realty Trust, Inc. v. JDN Real Estate-McKinney, L.P.*, 74 S.W.3d 527, 531 (Tex. App.—Dallas 2002, pet. denied). "Where the arbitration clause is <u>broad</u>, it is <u>only</u> necessary that the dispute touch matters covered by the agreement to arbitrate." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1068 (5th Cir. 1998) (emphasis added).

Notably, Texas courts have consistently found that disputes concerning efforts to collect amounts owed under a contract will fall within the scope of a broad arbitration clause. *See In re Conseco Finance Servicing Corp.*, 19 S.W.3d 562, 570 (Tex. App.—Waco 2000, orig. proceeding) (holding that alleged claims for violation of the Texas Debt Collection Act and the Deceptive Trade Practices Act fell within the scope of a broad form arbitration agreement). The court in *Conseco* provided the following commentary on this front:

> Although true that the claim raised by [Plaintiff] is not based on the formation or the terms of the contract, the arbitration clause is not so limited. Rather, the clause provides for arbitration of any claims "arising from or relating to" the contract.

> **[Plaintiff's] complaint arises from Conseco's alleged efforts to collect the amounts due under the terms of the agreement. Absent the contract, there would be no relationship between [Plaintiff] and Conseco, and there would have been no debt the collection of which caused the difficulty between them**. *See American Employers' Ins. Co. v. Aiken*, 942 S.W.2d 156, 160 (Tex. App.—Fort Worth 1997, no writ). **Therefore, we conclude that [Plaintiff's] claims based on Conseco's acts in collecting the debt owed on the contract arise from or relate to the contract and so are within the scope of the arbitration clause**.

*In re Conseco*, 19 S.W.3d at 570 (emphasis added).

Here, the Arbitration Provision applies to "all federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the transactions contemplated in connection with your request for credit services and/or assistance in obtaining an extension of credit." *See* Exhibit B, at § 1(c). Further, the Arbitration Provision applies to "all claims which are based upon an alleged violation of any <u>state</u> or <u>federal</u> constitution, <u>statute or regulation</u>." *Id*. at § 1(h) (emphasis added).[2] These are the exact type of claims upon which Plaintiff bases his petition.

In his petition, Plaintiff alleges that Defendant violated certain provisions of the TCPA (a federal statute) and the TDCA (a state statute). The TDCA regulates debt collection efforts. The TCPA regulates, among other things, the use of automated telephone systems to contact consumers, regardless of whether the communication is for debt-collection or advertisement purposes. Here, like in *Conseco*, Plaintiff's claims arise from Defendant's alleged efforts to collect amounts due under the terms of their agreement. *See In re Conseco*, 19 S.W.3d at 570. Absent the Agreement, there would be no relationship between Plaintiff and Defendant, no debt to collect, and no reason for Defendant to communicate with Plaintiff via telephone or otherwise.

---

[2] *See also Henry*, 551 S.W.3d at 115 ("the scope of an arbitration clause that includes all 'disputes,' and not just claims, is very broad and encompasses more than claims 'based solely on rights originating exclusively from the contract.'").

As stated above, the Conseco court held that the plaintiffs' TDCA claims fell within the scope of the broad arbitration provision at issue. *Id.* Further, several courts within the Fifth Circuit have held that TCPA claims fall within the scope of broad arbitration provisions. *Sexton v. Credit One Bank*, 5:15-CV-589-DAE, 2016 WL 6662423, at *3 (W.D. Tex. Jan. 4, 2016) (compelling arbitration of dispute over alleged TCPA violations in connection with bank's communications with plaintiff regarding outstanding credit card balance); *see also Deosaran v. Ace Cash Express, Inc.*, 4:16-CV-00919-O-BP, 2017 WL 1318568, at *3 (N.D. Tex. Mar. 23, 2017), report and recommendation adopted, 4:16-CV-00919-O-BP, 2017 WL 1296453 (N.D. Tex. Apr. 7, 2017) (finding plaintiff's claims for alleged TCPA violations by loan servicer in an attempt to collect debt owed pursuant to loan agreement fell squarely within arbitration agreement); *see also Alvarado v. Conn Appliances, Inc.*, 1:16-CV-464-LY, 2016 WL 6834020, at *1 (W.D. Tex. Nov. 17, 2016), report and recommendation adopted, 1:16-CV-464-LY, 2016 WL 10950458 (W.D. Tex. Dec. 14, 2016) (compelling arbitration in connection with plaintiff's allegations that lender's debt collection practices violated TCPA).[3] Here, Plaintiff's claims arise from and relate to the Agreement so the dispute falls within the scope of the Arbitration Provision.

Because a valid agreement to arbitrate exists and Plaintiff's claims fall within the scope of the arbitration agreement, it is clear that the parties agreed to arbitrate. Furthermore, no legal, statutory, or policy constraints prohibit arbitration. Given this, and in light of the above-referenced opinions compelling arbitration under almost identical circumstances, the Court should compel arbitration.

---

[3] Additionally, the San Antonio Court of Appeals has compelled arbitration for contract language that is nearly identical to the Arbitration Provision at issue. *See NCP Finance Ltd. Partnership v. Escatiola*, 350 S.W.3d 152, 155 (Tex. App.—San Antonio, no pet.).

D.    **Class Action Waiver**

Plaintiff's class action lawsuit is also barred by the terms of the Arbitration Provision. As shown above, the Arbitration Provision contained an arbitration requirement, a waiver of jury trial, and a waiver of the right to bring a class action. *See* Exhibit B, at § 2. When a class action waiver is included within an arbitration provision, the applicability of the class action waiver is dependent upon the validity and applicability of the arbitration provision. *Cash Biz, LP v. Henry*, 539 S.W.3d 342, 354 (Tex. App.—San Antonio 2016), *aff'd*, 551 S.W.3d 111 (Tex. 2018). The class action waiver in Cash Biz, LP v. Henry contained nearly identical language to the one at hand and was also encompassed within the arbitration provision. *Id*. at 346. In that case, the Court determined that the class action waiver was enforceable.

The preceding sections establish that the Arbitration Provision is valid, enforceable, and encompasses Plaintiff's claims. Accordingly, the class-action waiver contained within the arbitration provision must also apply, unless shown to be independently invalid. *See Cash Biz*, 539 S.W.3d at 354 (citing *NCP Fin. Ltd. P'ship v. Escatiola*, 350 S.W.3d 152, 155 (Tex. App.—San Antonio 2011, no pet.)). Accordingly, Defendant respectfully asks the Court to also recognize the enforceability of the class action waiver.

E.    **The Lawsuit Should be Dismissed with Prejudice.**

Although Section 3 of the FAA provides for a stay of proceedings pending arbitration, "[t]he weight of authority clearly supports dismissal of the case [as opposed to staying the suit] when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal with prejudice was appropriate where all of the claims raised in the district court were subject to arbitration clause). "A district court may dismiss, with prejudice, rather than stay, an action where all the issues are properly subject to arbitration." *Id.*; *White v. SoftLayer Techs., Inc.*, 3:15-CV-527-M,

2015 WL 5052365, at *6 (N.D. Tex. Aug. 27, 2015); *Washington v. Sears Logistics Servs., Inc.*, 2014 WL 2159253, at *4 (N.D. Tex. May 23, 2014) (holding that "[w]hen a court determines that all claims are subject to arbitration, dismissal of the action with prejudice is appropriate and within the court's discretion.").

Given that all of the claims raised in this lawsuit are subject to arbitration, Defendant respectfully asks the Court to compel arbitration and dismiss this case with prejudice. However, if the Court declines to dismiss the case, Defendant alternatively requests a stay of the lawsuit pending the completion of arbitration pursuant to Section 3 of the FAA. *See* 9 U.S.C. § 3.

## IV.     REQUEST FOR RELIEF

**WHEREFORE** Defendant Speedy Cash respectfully asks the Court to grant this motion and compel arbitration of Plaintiff Antonia Tarpley's claims pursuant to the Arbitration Provision, to dismiss Plaintiff's claims with prejudice, and for all other relief to which Defendant may be legally or equitably entitled.

Respectfully submitted,

**KILPATRICK TOWNSEND & STOCKTON LLP**

By:     /s/ *Zoe Stendara*
        ZOE STENDARA
        Texas Bar No: 24122986
        2001 Ross Avenue, Suite 4400
        Dallas, Texas 75201
        Telephone:   (214) 922-7115
        Telecopier:  (214) 279-1415
        Email: zstendara@kilpatricktownsend.com

**ATTORNEY FOR DEFENDANT
CASH LINK USA, LLC**

11

## **CERTIFICATE OF SERVICE**

   I hereby certify that on the 27th day of February, 2023, the foregoing document was served upon all counsel of record via the Court's CM/ECF System pursuant to the Federal Rules of Civil Procedure and the Local Rules of the Court.

**Email: mbadwan@sulaimanlaw.com**
**Email: mdaher@sulaimanlaw.com**
Mohammed O. Badwan
Marwan Daher
SULAIMAN LAW GROUP, LTD.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
*Attorneys for Plaintiff*

**Email: nayeem@nnmpc.com**
Nayeem N. Mohammed
LAW OFFICE OF NAYEEM N. MOHAMMED
539 W Commerce St #1899
Dallas, Texas 75208
*Attorney for Plaintiff*

                  *Zoe Stendara*
                  Zoe Stendara